UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-61474-RAR

**AMAYA LEE**,

    Plaintiff,

v.

**LILIYA KOROL**, *et al.*,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Remand [ECF No. 8] ("Motion") and Defendant's Response in Opposition [ECF No. 13] ("Response"). The Court held a telephonic hearing on the Motion on August 31, 2021 [ECF No. 15] ("Hearing"). As discussed on the record, having carefully reviewed the Motion and the Response, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion [ECF No. 8] is **GRANTED**. For the reasons set forth below, this case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

### BACKGROUND

On June 7, 2021, Plaintiff filed suit in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County against Defendants Liliya Korol and Mark Finkelshteyn. *See* Compl. [ECF No. 1-2]. The Complaint alleges one count of negligence against Defendant Korol and one count of a dangerous instrumentality claim against Defendant Finkelshteyn stemming from an incident in which Plaintiff asserts that she was injured after colliding with a vehicle driven by

Defendant Korol. *Id*. at 5. Plaintiff claims that Defendant Korol was negligent in her operation of the vehicle identified as a 2018 Honda CRV bearing Vehicle Identification Number 5J6RW2H53JA000226. *Id*. Additionally, Plaintiff alleges that Defendant Finkelshteyn consented to Defendant Korol's use of the 2018 Honda CRV, and, under Florida law, is liable for its use and operation on public streets. *Id*. at 6. The Complaint alleges damages in excess of thirty thousand dollars. *Id*.

On July 20, 2021, Defendants filed their Notice of Removal [ECF No. 1] ("Removal Notice"), alleging diversity jurisdiction under 28 U.S.C. section 1332(a). In their Removal Notice, Defendants contend that the amount in controversy exceeds $75,000 based on three items: 1) the face of Plaintiff's complaint seeking damages "in excess of $30,000"; 2) Plaintiff's description of alleged personal injuries; and 3) Plaintiff's pre-suit settlement demand letter for $100,000. *See* Removal Notice at 3. Shortly after removal, Plaintiff sought to remand this action, arguing that the pre-suit demand, standing alone, is insufficient to establish the amount in controversy; therefore, Defendants have failed to meet the requirements of federal jurisdiction. *See* Motion at 7. In its Response, Defendants counter that the pre-suit demand and its attachments do establish the amount in controversy because: 1) Plaintiff's complaint alleges the type of injuries and damages which show that the amount in controversy exceeds jurisdictional requirements and 2) the pre-suit demand by plaintiff is for an amount in excess of $75,000. *See* Resp. [ECF No. 13] at 2-3. The records attached to the settlement demand show that Plaintiff incurred medical expenses totaling $24,241.90, which Defendants contend is exclusive of future medical costs. *See* Ex. E to the Compl. [ECF No. 1-6] at 3.

## **LEGAL STANDARD**

Defendants are permitted to remove a case from state court to federal court if the case could have been brought in federal court in the first instance. 28 U.S.C. § 1441. This includes actions where the federal court has diversity jurisdiction under 28 U.S.C. § 1332, which requires complete diversity of citizenship between the plaintiff and all defendants and an amount in controversy exceeding $75,000. On a motion to remand, the removing party shoulders the burden of establishing federal subject matter jurisdiction. *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447. Critical to the analysis here, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

In determining whether subject matter jurisdiction exists, the Court focuses on the amount in controversy at the time of removal, not at any later point. *Stern v. First Liberty Ins. Co.*, 424 F. Supp. 3d 1264, 1269 (S.D. Fla. 2020) (citations omitted). "To determine whether this standard is met, a court first examines whether it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Id.* (citing *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1330 (11th Cir. 2006), abrogated on other grounds by *Dudley v. Eli Lilly & Co.*, 778 F.3d 909 (11th Cir. 2014)) (quotations omitted). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.*

"Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdiction requirement." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *see also* 28 U.S.C. § 1332(a).  Although the removing party carries the burden in establishing that removal was proper, "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka*, 608 F.3d at 754 (citations omitted).  However, "[a] conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the defendant's burden." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1320 (11th Cir. 2001) (citations omitted).

As explained above, Defendants rely on the pre-suit demand and Plaintiff's description of injuries to establish the amount in controversy.  Both are proper evidence for the Court to consider in determining whether the amount in controversy is satisfied.  *See Shields v. Fresh Market, Inc.*, No. 19- 60725, 2019 WL 1648974, at *2 (S.D. Fla. Apr. 17, 2019) ("Courts have previously held that pre-suit demand letters can qualify as 'other papers' under 28 U.S.C. § 1446(b)(3).") (collecting cases); *Sibilia v. Makita Corp.*, 674 F. Supp. 2d 1290, 1293 n.4 (M.D. Fla. 2009) ("[R]emoval would be appropriate if Defendant had used an 'other paper' under 28 U.S.C. § 1446(b) to establish the jurisdictional amount, such as  . . . medical bills or invoices establishing the amount of Plaintiff's damages.").

"While [a] settlement offer, by itself, may not be determinative, it counts for something." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994).  Accordingly, "[s]ettlement offers do not automatically establish the amount in controversy for purposes of diversity jurisdiction. Instead, courts have analyzed whether demand letters merely reflect puffing and posturing, or

whether they provide specific information to support the plaintiff's claim for damages and thus offer a reasonable assessment of the value of the claim." *Gluth v. Am. Airlines, Inc.*, No. 2:19-00918, 2020 WL 897986, at *2 (M.D. Fla. Feb. 25, 2020) (internal quotations and citations omitted); *see also Moses v. Home Depot U.S.A., Inc.*, No. 13-60546, 2013 WL 11977917, at *3 (S.D. Fla. June 19, 2013) ("While a pre-suit demand letter alone may not be determinative of the amount in controversy when it reflects 'puffing' and 'posturing,' a demand letter that provides specific information to support the plaintiff's claim for damages is entitled to more weight.") (internal alterations and quotations omitted).

## ANALYSIS

It is not unheard of for a plaintiff to offer to settle a claim before commencing litigation for a considerably higher amount than the ultimate amount in controversy. For example, a plaintiff could simply be wishing to "posture" to induce a higher counteroffer from the defendant, or a plaintiff could be factoring in a defendant's wish to avoid the tangential costs of litigation, such as attorney's fees or potential damage to a defendant's public reputation. Given the range of possible considerations that factor into a settlement offer, the amount for which a plaintiff offers to settle a claim cannot, standing alone, create federal jurisdiction. *Shields*, 2019 WL 1648974, at *2 (explaining that while a "demand letter, standing alone, may not be enough to satisfy the jurisdictional amount," when "combined with" supporting documentation, it can establish the amount in controversy).

During the Hearing, defense counsel represented that Defendants removed this action based primarily on Plaintiff's pre-suit demand letter—which Defendants claim establishes the amount in controversy in this matter. Further, defense counsel agreed that while the pre-suit demand is in excess of the jurisdictional amount, it sets forth damages for past medical expenses

in the amount of only $24,241.90—far short of the amount needed to satisfy jurisdictional requirements. *See* Ex. E to the Compl. [ECF No. 1-6] at 3. Critically, the demand Defendants rely on makes no explicit mention—nor so much as an estimation—as to the value of future medical expenses. *See generally id.* As a result, the demand letter here differs substantially from cases where courts have found the pre-suit demand letter sufficient to establish the amount in controversy.

In such cases, the pre-suit demand letter detailed, or at least estimated with some level of specificity and evidentiary support, the plaintiff's past and future medical expenses exceeding the jurisdictional amount. For example, in *Wilson v. Target Corp.*, the court found that a pre-suit demand letter "delineate[d] the extent of [Plaintiff's] injuries, the physicians who ha[d] treated her, and the medical care she received from each of those physicians. [Plaintiff] claim[ed] [in the letter] to have incurred in excess of $100,000.00 in medical expenses and estimate[d] her future medical expenses [would] be over $1 million." No. 10-80451, 2010 WL 3632794, at *4 (S.D. Fla. Sept. 14, 2010). Thus, the court concluded that "*[b]ecause of this detail*, the pre-suit demand [could] be considered reliable evidence that [Plaintiff]'s damages [would] exceed $75,000." *Id*. (emphasis added); *see also Gluth*, 2020 WL 897986, at *2 (finding pre-suit demand letter adequately demonstrated the amount-in-controversy where "[p]laintiff present[ed] a list of his future medical expenses based on recommendations from his physician. These expenses are itemized, and Plaintiff present[ed] a cost for each item of treatment rather than a lump sum. Plaintiff also explain[ed] the detailed methodology he used to calculate his past and future economic losses."); *Livolsi v. State Farm Mut. Auto. Ins. Co.*, No. 17- 80407, 2017 WL 7792572, at *2 (S.D. Fla. June 30, 2017) (remand avoided based, in part, on demand letter that "unlike the plaintiff's demand letter in [another case], [was] specific and detail[ed] past and future medical expenses" exceeding

the jurisdictional threshold); *La Rocca v. Stahlberger*, 676 F. Supp. 2d 1347, 1349-50 (S.D. Fla. 2009) (finding pre-suit demand package sufficiently demonstrated the amount in controversy where "[t]o satisfy its burden, [d]efendant point[ed] to medical reports wherein the lowest estimate of [p]laintiff's future medical bills would be $2,000 per year," which, based on plaintiff's age, was likely to exceed the jurisdictional amount when combined with the medical expenses already incurred by plaintiff). In this case, while the pre-suit demand letter contains medical records related to Plaintiff, some of which hint at the *possibility* of future medical expenses, the demand makes no effort whatsoever to estimate those expenses—much less estimate them with the requisite evidentiary support that caselaw requires.

Nor is this a case in which Plaintiff's well-supported quantified damages come close to $75,000, and the defendant seeks to make up the difference with plausible estimates or other logical inferences by the Court. In *Katz v. J.C. Penney Corp.*, for instance, plaintiffs had sought $58,995.78 for past medical expenses in their pre-suit demand package, leaving a balance of $16,004.02 to meet the $75,000 jurisdictional amount. No. 09- 60067, 2009 WL 1532129, at *6 (S.D. Fla. June 1, 2009). The court found that "[t]aking into account that the balance represent[ed] less than one half of the [p]laintiff's own estimate of $39,800 in future medical costs and [p]laintiff [sought] additional damages for pain and suffering, . . . [d]efendant ha[d] established by a preponderance of the evidence that the jurisdictional amount had been satisfied." *Id*.; *see also Henderson v. Dollar Gen. Corp.*, No. 07-00799, 2009 WL 959560, at *4 (S.D. Ala. Apr. 7, 2009) (finding the amount in controversy satisfied where plaintiff's quantified damages meant that the "defendant need[ed] only make up a difference of less than $10,000 in controversy to keep this case in federal court" and "'a fair and impartial mind' would clearly find that years of pain in addition to the other elements of damage that the plaintiffs claim[ed] add[ed] up to a dispute of at

least that amount.") (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1220-21 (11th Cir. 2007)). Here, by contrast, Plaintiff seeks only $24,241.90 for past medical expenses, a figure that is less than half the jurisdictional amount, leaving a balance of $50,759.10—and forcing the Court to make quite a leap in inferring that the amount in controversy can be met.

While "[t]he Court may [] use its judicial experience and make reasonable inferences and deductions to determine the amount in controversy," *Stern*, 424 F. Supp. 3d at 1269, this can only be done when the "removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the Court) with evidence . . . ." *Pretka.*, 608 F.3d at 754. Because Defendants can only provide record support for less than half of the requisite jurisdictional threshold, the Court rejects the invitation to infer that future medical expenses sought by Plaintiff make up the difference. *See Jeffers v. State Farm Mut. Auto. Ins. Co.*, No. 09-01097, 2010 WL 11623391, at *5 (M.D. Fla. July 19, 2010) ("The total of medical bills ($58,508.80) and other damages actually delineated [in a pre-suit demand letter] [did] not reach the $100,000 demanded or exceed the $75,000 . . . Whatever value such a letter might have in another case, the Court's 'reasonable deductions, reasonable inferences, and other reasonable extrapolations,' from the Demand Letter in this case . . . leave the Court of the view that the [] demand is indicative more of puffing and posturing for settlement than of an honest assessment of the value of the claims in this action.") (quoting *Pretka*, 608 F.3d. at 754).

Ultimately, the Court finds that the pre-suit demand Defendants rely on to establish the amount in controversy is more indicative of puffing and posturing than a reasonable assessment of the value of Plaintiff's claims because it lacks specific information substantiating Plaintiff's damages. *See Moses*, 2013 WL 11977917, at *3. At best, "the [d]emand [l]etter may indicate that the amount in controversy *potentially* exceeds $75,000, but it does not demonstrate 'by a

preponderance of the evidence that the amount in controversy can more likely than not be satisfied.'" *Jeffers*, 2010 WL 1162391, at *5 (quoting *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001)) (emphasis in original). Therefore, considerable doubt remains as to whether the amount in controversy is satisfied here, and as such the Court finds it appropriate to resolve these doubts "in favor of remand to state court." *Univ. of S. Ala.*, 168 F.3d at 411.

## CONCLUSION

Based on the foregoing, the Court finds that Defendants have failed to "prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdiction requirement." *Pretka*, 608 F.3d at 752. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Remand [ECF No. 8] is **GRANTED**. This case is **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County. The Clerk of Court is directed to **CLOSE** this case. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 31st day of August, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**